IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | | |
|---|---|---|---|
| **CONNIE SU MOSER,** | ) | | |
| **ID # 29275-037,** | ) | | |
| **Movant,** | ) | | |
| | ) | **No. 3:19-CV-2235-B-BH** | |
| **vs.** | ) | **No. 3:15-CR-478-B(2)** | |
| | ) | | |
| **UNITED STATES OF AMERICA,** | ) | | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on September 17, 2019 (doc. 2), should be **DENIED** with prejudice.

## I.    BACKGROUND

Connie Su Moser (Movant) challenges her federal conviction and sentence in Cause No. 3:15-CR-478-B(2).  The respondent is the United States of America (Government).

### A.    <u>Conviction and Sentencing</u>

After first being charged by superseding indictment with two others, on July 10, 2017, Movant pleaded guilty to a superseding information charging her with use of a facility of interstate commerce in aid of a racketeering enterprise in violation of 18 U.S.C. §§ 1952(a)(3) and (A) (Count One), and misprision of a felony in violation of 18 U.S.C. § 4 (Count Two) under a plea agreement.  (*See* docs. 36, 107-110, 130.)[2]

In her plea agreement, Movant stated that she understood and waived her rights to plead

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:15-CR-478-B(2).

not guilty, to have a trial by jury, to have her guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate herself. (*See* doc. 110 at 1.)[3]  She agreed that she understood the nature and elements of the offenses to which she was pleading guilty, and that the factual resume she signed was true and would be submitted as evidence.  (*See id.* at 1-2.)  The plea agreement set out the range of punishment for each count; it also stated that Movant had reviewed the federal sentencing guidelines with counsel, that she understood her sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of the Court's consideration of the guidelines.  (*See id.* at 2-3.)  She understood that the Court had sole discretion to impose the sentence.  (*See id.* at 3.)  She had thoroughly reviewed all legal and factual aspects of the case with counsel and believed that it was in her best interest to enter into the plea agreement and plead guilty.  (*See id.* at 6-7.)  The guilty plea was freely and voluntarily made and was not the result of force or threats, or of promises apart from those set forth in the plea agreement.  (*See id.* at 5.)  She waived her right to appeal her convictions and sentences and her right to contest them in a collateral proceeding, except that she reserved the right (a) to bring a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing, (b) to challenge the voluntariness of her guilty plea or the appeal waiver, and (c) to bring a claim of ineffective assistance of counsel.  (*See id.* at 6.)  In exchange, the Government agreed not to bring any additional charges against her based on the conduct underlying and related to her guilty plea, and to dismiss any remaining charges against her in the pending indictment after sentencing.  (*See id.* at 5.)

Movant also signed a plea agreement supplement in which she agreed to fully cooperate

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

with the Government concerning her participation in an offense of conviction and knowledge of criminal activities.  (*See* doc. 111 at 1.)  The supplement also provided that if, in its sole discretion, the Government determined that Movant provided substantial assistance in the investigation or prosecution of others, it would file a motion seeking sentencing consideration for Movant's assistance.  (*See id.*)   The Government also agreed that any information provided by Movant in connection with her assistance would not be used to increase her sentencing guideline level or for further prosecution, except that nothing she revealed would preclude the Government from prosecuting her for any violent crime.  (*See id.* at 1-2.)

Movant's first re-arraignment, scheduled for June 29, 2017, did not go forward, and Movant's counsel asked that it be rescheduled.  (*See* doc. 125.)  At her second re-arraignment on July 10, 2017, Movant, through a certified Korean-to-English interpreter, acknowledged under oath that she had thoroughly reviewed the plea agreement and factual resume with counsel, that both documents were translated into Korean for her, that she fully understood and agreed with all of the terms in the plea agreement, and that she understood and had committed each of the essential elements of Count One and Count Two.  (*See* doc. 297 at 3, 16-17, 29-32.)  She also acknowledged that she understood the rights she was giving up by pleading guilty, and that she was waiving her right to appeal from or challenge her convictions except in the limited circumstances set forth in the plea agreement.  (*See id.* at 18-25.)  She was advised that the sentencing guidelines were advisory and the Court was not required to follow them, and she affirmed that she understood the Court alone would determine her sentence. (*See id.* at 27-28.)  She affirmed that that she had not been threatened or pressured into pleading guilty, and that nothing was promised, said, or suggested to her to get her to plead guilty upon which she was relying, and which was not in writing in the plea agreement.  (*See id.* at 15-16, 20-21.)

She acknowledged that by pleading guilty to Count One, she was subjecting herself to a maximum period of imprisonment of five years, a fine up to $250,000 or twice any pecuniary gain to Movant or loss to the victims, a term of supervised release of not more than three years, a special assessment, and costs.  (*See id.* at 25-28.)  She also acknowledged that by pleading guilty to Count Two, she was subjecting herself to a maximum period of imprisonment of three years, a fine up to $250,000 or twice any pecuniary gain to Movant or loss to the victims, a term of supervised release of not more than one year, a special assessment, and costs.  (*See id.* at 26-28.)  Movant pled guilty to both counts, and the Court found that her guilty plea was knowing and voluntary.  (*See id.* at 29, 32-33.)

On September 21, 2017, the United States Probation Office (USPO) prepared a presentence investigation report (PSR) in which it applied the 2016 United States Sentencing Guidelines Manual.  (*See* doc. 147-1 at ¶ 34.)  The PSR calculated Movant's combined adjusted offense level at 32, from which three levels were deducted for acceptance of responsibility, resulting in a total offense level of 29.  (*See id.* at ¶¶ 94, 96-98.)  Based on a total offense level of 29 and a criminal history category of III, the resulting guideline imprisonment range was 108 to 135 months.  (*See id.* at ¶ 161.)  The statutory maximum term of imprisonment for Count One was five years, and the statutory maximum term of imprisonment for Count Two was three years, however.  (*See id.* at ¶ 160.)  Because the statutory maximum terms of imprisonment were less than the minimum of the guideline imprisonment range, the guideline term of imprisonment became 96 months, consisting of the maximum term of imprisonment for each count, run consecutively.  (*See id.* at ¶ 161.)

On November 30, 2017, Movant objected to the PSR's sentencing calculations on the grounds that the PSR's consideration of Movant's alleged acts and threats of violence, and of

"pseudo counts" to Count One, violated the spirit of the plea agreement and were not supported by the factual resume or the facts of the case. (*See* doc. 164.) The USPO issued an addendum to the PSR on December 26, 2017, in which it addressed and rejected Movant's objections. (*See* doc. 165-1.) On July 24, 2018, the Government filed objections to the PSR, arguing that additional facts not contained in the PSR also supported an enhancement that had already been applied in the PSR, that the use of "pseudo counts" to Count One was appropriate, and that Movant should have received a four-level, rather than a two-level, enhancement for her role in the offenses. (*See* doc. 222.) The USPO issued a second addendum to the PSR, in which it addressed, accepted, and adopted the Government's argument that Movant was subject to a four-level enhancement for her role in the charged offenses, rather than a two-level enhancement. (*See* doc. 226-1.) Because of the statutory maximum terms of imprisonment for Movant's charged offenses, however, the guideline imprisonment range remained the same. (*See id.* at 1, ¶ 161.)

At the sentencing hearing on September 28, 2018, the Court overruled Movant's objections and agreed with the Government's argument that a four-level enhancement for Movant's role in the offense was supported. (*See* No. 3:19-CV-2235-B-BH, doc. 17 at 30-42.) Movant also claimed at sentencing that the Government should have filed a motion based on her cooperation in the case. (*See id.*, doc. 17 at 31.) The Government acknowledged that it met with Movant in the hopes of using her as a witness in a co-defendant's trial, but it argued that she had not fully owned up to her actions and that her cooperation did not rise to a level meriting sentencing consideration under U.S.S.G. § 5K1.1. (*See id.* at 32-33.) The Court denied Movant's challenge on this basis. (*See id.* at 36.) It sentenced her to consecutive terms of 60 months' imprisonment on Count One and of 36 months' imprisonment on Count Two, for a total of 96 months' imprisonment, to be followed by a concurrent term of one year of supervised release by judgment dated September 28, 2018.

(*See* doc. 238 at 1-3.)  At the conclusion of the sentencing hearing, the Court directed counsel to ask Movant if she wanted to appeal, and to make sure that the notice was timely filed within two weeks after the judgment.  (*See* No. 3:19-CV-2235-B-BH, doc. 17 at 51.) Movant did not file an appeal.

**B.    Substantive Claims**

In her § 2255 motion, Movant asserts the following grounds of ineffective assistance of counsel:

Pretrial Counsel's Failure:

(1)  Communicate Plea Offer by not allowing [Movant] time to consider it;

(2)  Guilty Plea was Induced by Coercion;

(3)  Prosecutor Threatened to Prosecute Third Party; and

(4)  Misadvice – Likey [sic] Sentence . . . [.]

Sentencing Counsel's Failure To:

(1)  Challenge why the Prosecutor did not file a supplement motion 5K.1 [sic] as stipulated in Plea Agreement; and

(2)  File a Notice of Appeal[.]

(No. 3:19-CV-2235-B-BH, doc. 2 at 7.)  The Government filed a response on January 21, 2020. (*See id.*, doc. 17.)  Movant filed a reply on June 22, 2020.  (*See id.*, doc. 33.)

**C.    Evidentiary Hearing**

An evidentiary hearing was held on July 19, 2022, regarding Movant's claim that counsel failed to file a notice of appeal.  Movant and her two trial attorneys, Thomas D'Amore (D'Amore) and Howard Blackmon (Blackmon) testified.

According to Movant, she had been incarcerated since her arrest in 2016.  At the conclusion of her sentencing hearing, she immediately spoke to D'Amore and repeatedly told him that she

wanted to appeal. He told her that they should not talk in the courtroom, and he walked away. She followed him into the hallway and through another door, where he told her that he did not think she could appeal her sentence. When she asked why, he said it was because she had signed the plea agreement. She then asked about the Court's statements at sentencing that she could appeal within 14 days; D'Amore allegedly responded that he did not want to talk to her about it there and would rather talk to her in a couple of days at the jail because he did not have time to talk to her then. When she asked him why he was not defending her, he again said they would talk at the jail. He told her she had to back to the front, so she walked back to the front. After she returned to jail, she waited a day or two for counsel to contact or visit her, but she did not hear from either attorney. She attempted to contact counsel while incarcerated before being transferred to a Bureau of Prisons (BOP) institution; she sent two letters to D'Amore during the seven days she was in custody in Kaufman County before being transferred to Fannin County for two months, and she made 2-3 telephone calls to him every day. She did not receive any response to her letters, and she was not able to leave a telephone message because there was no answering machine or secretary. She never told counsel that she did not want to file an appeal, and she did not see counsel again after she was sentenced.

D'Amore testified that he discussed every paragraph of the plea agreement with Movant at the jail with an interpreter present. He discussed the appeal waiver in the plea agreement, and she appeared to understand the waiver. After Movant was sentenced, D'Amore, Blackmon, and an interpreter went to the United States Marshals Service (USMS) holding area to speak with Movant because the Court had asked them to discuss with her whether she wanted to file an appeal. In response to a specific question about whether Movant followed counsel and the interpreter to the USMS holding area, D'Amore said that she did not because she was in custody. When they spoke,

Movant told them that she did not want to appeal.  D'Amore did not tell Movant that she could not appeal, and he did not recall receiving any messages from Movant during the 14 days after she was sentenced.  Although he had moved offices at some point, he had a receptionist during the day, and he also used his old office phone number, which had voicemail in place.  He would have known if he were receiving 20 or more calls per week from Movant.  If Movant had expressed a desire to appeal, D'Amore would have filed a notice of appeal.  Long after 14 days from sentencing, he received a couple of letters from Movant, but they were about issues other than an appeal.

Blackmon testified that he discussed the plea agreement's appeal waiver with Movant, and that a translator was present during the discussion.  It was his opinion that she understood the appeal waiver.  After Movant was sentenced, he went to see her in the USMS holding area with D'Amore and an interpreter to ask her if she wanted to appeal.  She said that she did not want to appeal.  If she had told them she wanted to appeal, a notice of appeal would have been filed.  He did not hear or receive letters from Movant during the 14 days after she was sentenced.  He had a part-time assistant, and clients could contact him at his office or personal phone numbers, or by email, mail, or text message.

## II.    SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

8

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims that trial counsel rendered ineffective assistance during the pretrial and sentencing proceedings. (*See* No. 3:19-CV-2235-B-BH, doc. 2 at 7.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

## A.    Communication of Plea Offer

In her first ground relating to pretrial proceedings, Movant contends that counsel was ineffective based on a "Failure to Communicate Plea Offer with [Movant] by not allowing her time to consider it (and/or by possibly allowing plea agreement to expire without advising her)." (No. 3:19-CV-2235-B-BH, doc. 3 at 10; *see also id.*, doc. 2 at 7.) She argues that "there was not any reasonable communication from the time [Movant's] attorneys . . . first introduced the formal plea offer on or about May 23rd, 2017, and by pressuring her into signing, the very next day, on May 24th, 2017." (*Id.*, doc. 3 at 11.) She claims that she "was not effectively allowed to participate in her defense under this one day time constraint." (*Id.*)

Even assuming for purposes of this motion only that counsel rendered deficient performance in communicating the plea offer as alleged by Movant, *Strickland* also requires a

showing of resulting prejudice.  Movant does not offer any allegations or evidence in her § 2255 motion or supporting brief to show prejudice; in her reply, she offers only conclusory allegations of prejudice unsupported by the record.  (*See* No. 3:19-CV-2235-B-BH, doc. 33 at 34, 40.)  A court should not "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017); *see also United States v. Guzman*, No. 19-10783, 2021 WL 4610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam) (holding that the movant "must substantiate any preference to proceed to trial—if he had been properly advised on the sentence he was facing— with 'contemporaneous evidence,' not post hoc assertions.").  Because Movant offers nothing beyond conclusory and *post hoc* allegations of prejudice to support her claim, she has failed to show a reasonable probability that she would have rejected the plea agreement and insisted on proceeding to trial in the absence of the alleged deficiencies of counsel.[4]  Accordingly, she has failed to satisfy the prejudice prong of *Strickland*, and the claim should be denied.

## B.  **Sentence Exposure**

In her fourth ground relating to pretrial proceedings, Movant contends that counsel was ineffective based on "Misadvice – Likely Sentence."  (No. 3:19-CV-2235-B-BH, doc. 3 at 16; *see also id.*, doc. 2 at 7.)  She contends that her "attorney(s) told her 'one charge would be ran inside the other' and not consecutively; then made non-verbal mannerism(s) with his hand/ a thumbs-up

---

[4] In her reply, contrary to her original allegation that counsel "first introduced the formal plea offer on or about May 23rd, 2017," Movant contends that counsel never explained or presented her with complete pages of the plea documents, and instead provided only the signature pages for her to sign.  (No. 3:19-CV-2235-B-BH, doc. 3 at 11; *see also id.*, doc. 33 at 20, 33-36, 45-46.)  As with her original allegations, Movant has offered only conclusory, *post hoc* allegations of prejudice to support her claim, which are insufficient to satisfy her burden under *Strickland*.  *See Lee*, 137 S. Ct. at 1967; *Guzman*, 2021 WL 4610124, at *3.  Accordingly, to the extent she relies on these additional allegations in her reply as a basis for relief on her claim regarding counsel's communication of the plea agreement and plea documents, the claim should be denied because she has failed to show *Strickland* prejudice.

sign pointing backwards saying, 'YOU! OUT!' meaning you're about to get out of jail." (*Id.*, doc. 3 at 16-17.)  Movant also alleges that conversations with her attorneys "first began with they would be trying to get [Movant] out of jail and then they talked about negotiating a plea agreement where she would only get a sentence of 5 years and she would be getting a USSG 5K1 [sic] (AKA safety valve) so [Movant] would only serve about 2 or 3 years," and that her "[a]ttorneys also advised [her] that the plea agreement would assure that she would get no more than 5 years and with the USSG 5K1.1 downward departure she would get a sentence from 1 year to 3 ½ years." (*Id.*, doc. 33 at 17, 34.)  Additionally, she alleges that counsel "stated that the deal was 5 years [sic] imprisonment not eight years." (*Id.*, doc. 33 at 47.)

"'[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel.'"  *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).  "'When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.'"  *Id.* (quoting *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)).

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*.  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court.  By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

*United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (citations and internal quotation marks omitted).  A significant miscalculation between counsel's erroneous sentence estimate and the actual sentencing range can constitute deficient performance.  *See id.* at 437 (finding that counsel was deficient for advising his client that he faced only 6 to 12 months' imprisonment if

convicted based on misunderstanding of the guidelines, when he actually faced a range of 70 to 87 months); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (stating that "[a]n attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial[,]" and remanding for determination of whether alleged misrepresentation was actually made).

Even assuming for purposes of this motion only that counsel rendered deficient performance in representing Movant's sentence exposure, deficient performance alone is insufficient to establish relief under § 2255. *Strickland* also requires a showing of resulting prejudice. When a movant

> adduce[s] no proof that he was promised or assured of a specific sentence, but, rather, that counsel gave him his "best estimate" of what sentence might be given if he pled guilty . . . [and when] [t]he plea agreement and the record of the change of plea hearing are replete with references to the fact that the District Court would make the determinations with respect to his sentence under the sentencing guidelines, that the District Court could decline to follow recommendations, and that no promises had been made with respect to the sentence that the District Court would impose[,]

the district court properly denies relief for lack of prejudice. *United States v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004); *see also United States v. Mackay*, No. 3:04-CV-0413-D, 2007 WL 700895, at \*26-27 (N.D. Tex. Mar. 6, 2007).

Here, Movant was advised both through the plea agreement and by the Court in person that by pleading guilty, she was subjecting herself to a statutory maximum period of imprisonment of five years on Count One and three years on Count Two. (*See* doc. 110 at 2; doc. 297 at 25-28.) She was also advised though the plea documents and at her re-arraignment that her sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not mandatory. (*See* doc. 110 at 2-3; doc. 297 at 27-28.) She swore in open court that no promise

had been made to her to get her to plead guilty, she was not relying on any promise that was not in writing in the plea agreement, and she understood that only the Court would determine her sentence under the sentencing guidelines and that it could impose a sentence below or above the applicable guideline range.   (*See* doc. 297 at 15-16, 20-21, 27-28.)

Regardless of what counsel told her about her likely sentence, Movant cannot show prejudice under *Strickland* because her plea documents and responses under oath to the Court's questioning show that she was clearly informed about and understood her maximum sentence exposure when she pled guilty under the plea agreement.[5]  Movant is therefore not entitled to § 2255 relief on this ground, and it should be denied.

**C.    Section 5K1.1 Motion**

In her first ground relating to sentencing proceedings, Movant contends that counsel was ineffective based on a failure to "[c]hallenge why the Prosecutor did not file a supplement motion 5K.1 [sic] as stipulated in the Plea Agreement."  (No. 3:19-CV-2235-B-BH, doc. 2 at 7; *see also id.*, doc. 3 at 17.)  She argues that "[d]ue to the failure and negligence of [Movant's] attorney(s) for not adequately explaining the Plea Agreement and the proceedings of her approaching court date, the (first) Arraignment Hearing held on 6/29/2017, [Movant] was not equipped with the

---

[5] The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that her attorney made alleged promises to her, even though inconsistent with representations she made in court when entering her plea. A movant is entitled to an evidentiary hearing if she presents evidence of: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998) (citing *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989)). A movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties. *Id.*  When the movant's "showing is inconsistent with the bulk of [her] conduct or otherwise fails to meet [her] burden of proof in light of other evidence in the record," however, the Court may dispense with her allegations without an evidentiary hearing. *Id.*  Here, Movant has not provided evidence of the specific terms of any alleged promise, including where and when counsel made such promise; nor has she identified an eyewitness to any alleged promise or alleged that any such promise caused her to plead guilty.  Movant has accordingly failed to provide independent indicia of the merit of an alleged promise.  To the extent Movant's claim may be liberally construed to argue that counsel promised she would receive a specific sentence, she has not demonstrated entitlement to an evidentiary hearing or to relief on this basis.

proper understanding of these matters in a formal setting, and caused the forfeiture of her own downward departure [ ] (5K.1 [sic] Motion)[.]"  (*Id.*, doc. 3 at 17.)

Here, the parties signed a plea agreement supplement in which the Government agreed that if, in its sole discretion, it determined that Movant had provided substantial assistance in the investigation or prosecution of others, it would file a motion seeking sentencing consideration for that assistance.  (*See* doc. 111 at 1.)  At sentencing, counsel challenged the Government's failure to file any such motion, arguing that "something more should have been done on [Movant's] behalf and not gone the other way, as the government did," after Movant had met with the Government three separate times "in an effort to fulfill and to cooperate."  (No. 3:19-CV-2235-B-BH, doc. 17 at 31.)  The Government acknowledged the meetings and the hope of using her as a witness in her co-defendant's trial, but argued that Movant did not fully own up to her actions and that her cooperation did not rise to a level meriting sentencing consideration under U.S.S.G. § 5K1.1.[6] (*See id.*, doc. 17 at 32-33.)  The Court rejected Movant's arguments in this regard.

Because the record shows that trial counsel challenged the Government's failure to file a motion for sentencing consideration based on Movant's cooperation, and because she failed to allege or show resulting prejudice under *Strickland*, her claim is without merit.  Additionally, to the extent Movant contends that the fact that her initial re-arraignment hearing scheduled for June 29, 2017 did not go forward "caused [her] to forfeit her 5K.1 [sic] supplement motion," her conclusory allegation is unsupported by the record and is insufficient to warrant § 2255 relief.  (*Id.*, doc. 3 at 12, 17); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his

---

[6] After the criminal proceedings had concluded, the Government again advised Movant, through her new appointed counsel, that a motion for sentencing consideration based on her cooperation had not been filed because she "almost backed out of her own guilty plea saying things to her lawyers and [the prosecutor] that were inconsistent with her cooperation," so the it was unable to call her as a witness.  (doc. 3:19-CV-2235-B-BH, doc. 3 at 23.)

*pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be

of probative evidentiary value."); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding

that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue

in a federal habeas proceeding."). The claim should therefore be denied.

### D.    <u>Notice of Appeal</u>

In her second ground relating to sentencing proceedings, Movant contends that counsel

was ineffective for failing to "File a Notice of Appeal." (No. 3:19-CV-2235-B-BH, doc. 2 at 7;

*see also id.*, doc. 3 at 19-21.) She claims that "after the Sentencing Hearing proceedings were

brought to a close, [Movant] requested a word with both her attorneys . . . in a backroom of the

courthouse. [She] profoundly stated to both her attorneys that she wanted to appeal." (*Id.*, doc. 3

at 20.) In her reply, she claims that after sentencing, she "immediately requested [counsel] to file

an appeal," and that Blackmon "stated that he would discuss the appeal process with her later,"

while D'Amore "stated that doing an appeal would be an uphill battle." (*Id.*, doc. 33 at 40.)

At the evidentiary hearing, Movant testified that she had been in custody since 2016 at the

time of the sentencing, and that at the conclusion of the sentencing hearing, she immediately and

repeatedly told D'Amore that she wanted to appeal. She followed him into a hallway and through

another door after he said that they should not talk in the courtroom, and after an exchange about

whether she could file an appeal, he told her they would talk in a couple of days at the jail. She

testified that she sent D'Amore two letters after sentencing and called him 2-3 times per day, but

he never contacted or met with her after sentencing. Both attorneys testified that they discussed

the appeal waiver provision in the plea agreement with Movant in the presence of an interpreter

and opined that she understood it. The transcript of the sentencing hearing reflects that at the

conclusion of the hearing, the Court told counsel to discuss with Movant whether she wanted to

file an appeal. Both testified that after the sentencing hearing, they and an interpreter met with Movant in the USMS holding area, where she told them that she did not want to appeal. D'Amore testified that he received a couple of letters from Movant after the 14-day period to appeal on issues other than an appeal, and that he did not recall receiving any messages from Movant during the 14-day period to appeal, although he would have known if he had been receiving 20 or more calls per week from her. Blackmon testified that he did not hear from or receive any letters from Movant during the 14-day period to appeal.

"There is no constitutional right to appeal a criminal sentence." *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Counsel "is not burdened by any general duty to perfect an appeal of every criminal conviction." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). Counsel's failure to pursue an appeal can amount to ineffective assistance under *Strickland*, however. *See United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000)).

The assessment of deficient performance "begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *Pham*, 722 F.3d at 323 (citation omitted). "'Consulting' is a term of art that means 'advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.'" *Id.* (citation omitted). There is no constitutional requirement that counsel consult with the defendant about an appeal in every case. *Flores-Ortega*, 528 U.S. at 479-80. A constitutionally imposed duty arises when there is reason to think that a rational defendant would want to appeal, such as when there are nonfrivolous grounds for appeal, or when the defendant has reasonably demonstrated to counsel that she is interested in appealing. *Id.* at 480.

A movant can satisfy the prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "[C]ourts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct'[.]" *Id.* at 477 (citation omitted). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Pham*, 722 F.3d at 323-24 (citation and internal quotation marks omitted); *see also Garza v. Idaho*, 139 S. Ct. 738, 746 (2019) ("Where . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions."); *Flores-Ortega*, 528 U.S. at 477. If a movant proves, by a preponderance of the evidence, that she directed her counsel to file an appeal and it was not filed, prejudice is presumed regardless of the merits and regardless of any appeal waiver. *See United States v. Tapp*, 491 F.3d 263, 265-66 (5th Cir. 2007). When a movant is denied the opportunity to appeal due to ineffective assistance of counsel, the movant is entitled to an out-of-time appeal. *See id.* at 266; *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001).

Here, the record shows that in March and April 2019, approximately six months after sentencing, Movant filed three *pro se* requests for copies of the plea agreement, judgment, and indictment in her criminal case. (*See* docs. 278-79, 281.) On April 29, 2019, she filed a *pro se* letter requesting the appointment of counsel to file "an appeal due to ineffective counsel . . . . who lied to me, did not fight for me, coarsed [sic] me with treats [sic] to my family and had me sign an agreement that did not help me and I did not understand." (doc. 282.) In May and June 2019, she also requested copies of her "sentencing memorandum," transcripts, and the docket sheet. (*See* docs. 283, 286, 288-89.) Nothing in her post-judgment *pro se* filings indicates that she had directed

counsel to file an appeal, or that counsel failed to file an appeal as requested, which is consistent with counsel's testimony that she told them she did not want to appeal the judgment. The §2255 motion, filed nearly one year after sentencing, was the first time Movant claimed that counsel failed to file an appeal as requested. (*See* No. 3:19-CV-2235-B-BH, doc. 2 at 7; doc. 3 at 19-21.)

Additionally, correspondence directed to Movant from counsel appointed in response to her April 29, 2019 filing and attached as an exhibit to Movant's memorandum in support, states that appointed counsel spoke with Movant and she "did not say that [she] wanted to appeal your case," which is also consistent with trial counsel's testimony at the evidentiary hearing that Movant told them she did not want to appeal. (No. 3:19-CV-2235-B-BH, doc. 3 at 23.) The transcript of the sentencing hearing supports the attorneys' testimony that at the conclusion of the hearing, the Court specifically instructed them to talk with Movant about whether she wanted to appeal. Both testified that they went to the USMS holding area and spoke to Movant there, and D'Amore testified that Movant did not follow them to the location of the discussion because she was in custody. Movant's testimony that after sentencing she followed D'Amore out of the courtroom into a hallway and through another door, where they had an exchange about whether to appeal, is also inconsistent with her custody status. (*See id.*, doc. 17 at 52.) Based on the demeanor of the witnesses at the hearing, their respective roles, any apparent bias, inconsistencies in testimony, explanations for inconsistencies, and corroborating evidence, the Court finds more credible the testimony of Movant's two attorneys that they talked with Movant about an appeal in the USMS's holding area after the sentencing hearing, as instructed, and that she told them that she did not want to appeal. Movant has not proven by a preponderance of the evidence that she told either of her attorneys to appeal her criminal conviction or sentence.

Further, given the circumstances of this case, counsel had no reason to think Movant

wanted to appeal. She entered a guilty plea on both counts of the superseding information and admitted the facts supporting each count, and she avoided a felony conviction for conspiracy to commit sex trafficking, with which she had been charged in the superseding indictment, and which carried more severe penalties than the charges in the superseding information. Because Movant did not tell counsel to file an appeal, and considering Movant's appellate-rights waiver and the charges on which she was convicted in comparison to the charges on which was indicted, counsel had no reason to think that a rational defendant would want to appeal. *See Flores-Ortega*, 528 U.S. at 480. Movant has failed to show that she received ineffective assistance of counsel regarding an appeal, and her claim should be denied.

### E.   **Other Claims**

For the first time in her reply, Movant raises several new claims of ineffective assistance of counsel, including that counsel was ineffective for failing to: investigate her case; negotiate an amicable plea agreement; inform her about the elements and penalties of the charged offenses; discuss or provide a copy of the PSR; inform her about the status of plea negotiations; inspect or request the Government's evidence; interview witnesses; advise her about or allow her to read the contents of the plea documents; challenge the superseding indictment; file various pre-trial motions and objections; challenge the forfeiture of property provisions in the superseding information and plea agreement; advise her against waiving her constitutional rights under the plea agreement; challenge the factual and constitutional bases for the charge for misprision of a felony in Count Two; explain, clarify, or object to the inclusion of the deportation clause in the plea agreement; challenge the sufficiency of the evidence; challenge the reasonableness of the sentence; and argue that there was a breach of the plea agreement. (*See* No. 3:19-CV-2235-B-BH, doc. 33 at 8-11, 14-25, 27-35, 38-39, 44-48.)

Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires that motions filed pursuant to § 2255 "specify all the grounds for relief available to the moving party." A movant may amend a § 2255 motion in accordance with Fed. R. Civ. P. 15. *See United States v. Saenz*, 282 F.3d 354, 355-56 (5th Cir. 2002). New claims raised for the first time in a reply brief need not be considered by the Court, however. *See Cervantes*, 132 F.3d at 1111 (5th Cir. 1998) (holding that a district court does not abuse its discretion in refusing to consider new issues in a § 2255 reply brief after the government filed its response); *Brown v. United States*, No. 3:14-CV-4031-D (BH), 2016 WL 7187450, at *6 (N.D. Tex. Nov. 7, 2016). Accordingly, the Court may decline to consider these ineffective assistance of counsel claims asserted for the first time in her reply.

Even assuming for purposes of this motion only that these claims were properly raised in her § 2255 filings and not time-barred[7] or waived by her guilty plea,[8] and that counsel rendered deficient performance as alleged, Movant has failed to show prejudice under *Strickland*. Her conclusory *post hoc* and unsubstantiated assertions of prejudice are insufficient to satisfy her burden to show a reasonable probability that but for counsel's alleged deficiencies, she would not have pleaded guilty and would have insisted on proceeding to trial, or that the results of the proceedings would have been different. *See Lee*, 137 S. Ct. at 1967; *Ross*, 694 F.2d at 1011; *Miller*, 200 F.3d at 282.

---

[7] The claims were raised for the first time in her reply, which was filed over one year after her conviction became final under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104–132, 110 Stat. 1214. Because the limitations issue is not jurisdictional, however, courts may bypass it and proceed to the merits of a habeas action. *See, e.g.*, *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).

[8] Movant pled guilty in the underlying criminal case, and the Court determined that her guilty plea was knowing and voluntary. (*See* doc. 297 at 29, 32-33.) To the extent her guilty plea was knowing and voluntary, as discussed further below, she waived all non-jurisdictional claims related to alleged defects during the initial appearance and pretrial stages of the underlying criminal case. *See United States v. Sublet*, 211 F. App'x 301, 302 (5th Cir. 2006) ("With respect to his guilty-plea convictions, [the defendant] has waived all non-jurisdictional defects in the proceedings before the district court by entering a valid, unconditional guilty plea.").

## IV.    INVOLUNTARINESS OF PLEA

In her second and third grounds, Movant contends that counsel was ineffective because her "Guilty Plea was Induced by Coercion," and the "Prosecutor Threatened to Prosecute Third Party," respectively.  (No. 3:19-CV-2235-B-BH, doc. 2 at 7; *see also id.*, doc. 3 at 13; doc. 33 at 36.)  She claims that her counsel "coerced and pressured her into signing the Plea Offer, by stating the Prosecutor is threatening to prosecute James, her son, if she did not sign today [May 23, 2017]." (*Id.*, doc. 3 at 13; *see also id.*, doc. 3 at 14.)  She argues that she "felt extreme pressure from her attorney(s) into signing Plea Offer, especially without translator, pleading with them—'Please just give me one day.'"  (*Id.*, doc. 3 at 14.)  According to Movant, she then spoke with her son and niece and got into an argument with them "about why she NOT sign the Plea Offer, if the Prosecutor was threatening to prosecute him."  (*Id.*)  She claims that the next day, May 24, 2017, "the attorney(s) and their translater [sic] visited the jail and continued to coerce [Movant] into signing the Plea Agreement without time to even think the matter over.  [Movant] states, that the attorney didn't even read the Plea Agreement to the translator, but said the Plea Offer in his own words for the translator to interpret to [Movant]."  (*Id.*, doc. 3 at 15.)

A plea of guilty waives a number of constitutional rights.  *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'"  *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748).  A plea qualifies as intelligent

when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks omitted). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances

surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

The record shows that Movant signed the plea agreement stating that her guilty plea was freely and voluntarily made and was not the result of force or threats, or of promises apart from those in the plea agreement. (*See* doc. 110 at 5.) At her re-arraignment on July 10, 2017, Movant testified under oath that she had thoroughly reviewed the plea agreement with counsel, had it translated from English into Korean, fully understood all of the terms in the plea agreement, and agreed with all of it. (*See* doc. 297 at 16-17.) She swore to the Court that no one had threatened or pressured her into pleading guilty, and that other than what she was charged with and what was contained in writing in the plea agreement, no other promise had been made to her in order to get her to plead guilty, or on which she was relying.[9] (*See id.* at 15-16, 20-21.)

---

[9] Movant reply contradicts her sworn hearing testimony by alleging that she "answered 'yes' and or 'no' to all the questions from the Judge pursuant to [counsel's] orders," that "after severe bullying, threats to her family, intimation [sic], manipulation, coercion, etc. by [counsel], [Movant] at the second rearraigment [sic] answered yes or no to the hearing colloquy," and that counsel "coerc[ed] [Movant] to make only positive responses during the rearraignment hearing[.]" (No. 3:19-CV-2235-B-BH, doc. 33 at 6, 33, 35.) These allegations are belied by the record from her July 10, 2017 re-arraignment. Movant did not simply answer "yes" or "no" or with "only positive responses" in response to the Court's questions; she instead responded with questions of her own, explanations, and short statements when necessary. (*See, e.g.*, doc. 297 at 4-8, 10, 14, 17, 21, 29-30, 32-33.) Movant's affidavit states that counsel "told me that in order to obtain the benefits of the plea agreement you need to just answer 'Yes' to all the questions presented

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of verity given to her sworn statements in open court, and the great evidentiary weight accorded to court records. *See Blackledge*, 431 U.S. at 74. Her contemporaneous plea documents and sworn statements before the Court contradict her allegations that she was coerced or threatened by counsel into pleading guilty.[10] She has not shown that her guilty plea was involuntary, or a reasonable probability that she would have rejected the

---

at the next arraignment hearing," to which she "responded by telling them that I was sworned [sic] to tell the truth because I did not want to go to prison for perjury charges." (No. 3:19-CV-2235-B-BH, doc. 33 at 45.) Because the contemporaneous evidence in the record at the time Movant pled guilty negates her *post hoc* allegations contradicting her sworn testimony, she is not entitled to § 2255 relief on this basis. *See United States v. McClinton*, 782 F. App'x 312, 314-15 (5th Cir. 2019) (affirming denial of § 2255 motion because contemporaneous evidence at re-arraignment hearing negated Movant's *post hoc* allegations).

[10] Movant's § 2255 filings argue that her "factual allegations raise a substantial constitutional question, as to, the extent which prosecutors in plea bargaining may utilize threats against third persons as a negotiating tactic, and as to whether the actual threat originated with the Prosecutor, or was it the sole act of coercion to induce a guilty plea by [Movant's] attorney[.]" (No. 3:19-CV-2235-B-BH, doc. 3 at 24; *see also id.*, doc. 3 at 16.) To the extent Movant's § 2255 filings may be liberally construed as asserting a separate claim that the Government threatened to prosecute Movant's son if she did not plead guilty, the claim fails. "In negotiating a guilty plea, 'threatening prosecution of a third party family member is not itself legally wrong.'" *United States v. Jimerson*, 754 F. App'x 275, 277 (5th Cir. 2018) (quoting *United States v. Diaz*, 733 F.2d 371, 375 (5th Cir. 1984)). A prosecutor "may leverage potential charges against a defendant's family member during plea bargaining provided they have probable cause to bring the threatened charges." *Id.* Even if the Government threatened to prosecute her son, Movant offers no allegations or evidence showing that it lacked probable cause to bring potential charges against him. The record shows that Movant used her son's name to insulate herself from prosecution and evade law enforcement; she purchased a home in his name with proceeds from her criminal activities, and his name was also on financial statements for her criminal business. (*See* doc. 147-1 at ¶¶ 20, 156.) Movant has not carried her burden under § 2255 on this claim, if asserted.

plea agreement absent counsel's alleged deficiencies. She is not entitled to § 2255 relief on this claim, and it should be denied.

## V.    DUE PROCESS

In her reply, Movant contends that she "was deprived of the Due Process clause since [Movant's] sentence was based upon mere speculation," and that "the Court and [the Government] violated [Movant's] due process rights because the District Court did not conduct an individualized assessment of the circumstances of the case." (No. 3:19-CV-2235-B-BH, doc. 33 at 37-38.) She argues that "the U.S. Prosecutor and the Court during sentencing suggested that because of [Movant's] criminal livilihood [sic], she was a leader in the sex trafficking and commercial sex racketeering charges." (*Id.*, doc. 33 at37.) She claims that "the Court could not use this information to insist that [Movant] was a leader in this conspiracy with co-defendant . . . . [and] the U.S. Prosecutor does not have credible or reliable information to sustain this position." (*Id.*, doc. 33 at 37-38.) She also claims that "it appears that the sentencing Judge and the U.S. Prosecutor based [Movant's] sentence on her arrest record and not on the 18 USC 3553(a) factors that must be considered." (*Id.*, doc. 33 at 38.) As discussed, the Court may decline to consider Movant's claims asserted for the first time in her reply. Even if considered, however, her claims are refuted by the record.

The record shows that the Government argued for a sentence enhancement based on the offense conduct set out in the PSR and addenda, and that the Court considered that offense conduct in determining whether Movant was a leader or organizer for purposes of sentencing.[11] (*See id.*,

---

[11] A PSR "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (citation and internal quotation marks omitted). Here, beyond unsubstantiated allegations, Movant has not provided any rebuttal evidence demonstrating that the information in the PSR and addenda was "materially untrue, inaccurate, or unreliable." *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) (citation and internal quotation marks omitted).

doc. 17 at 39-42.) Neither the Government nor the Court stated or otherwise indicated that Movant's role as a leader or organizer for sentencing purposes was based on her criminal history. (*See id.*)  To the extent Movant argues that the Government "does not have credible or reliable information," and that the "record does not show any information indicating" that she was a leader or organizer, her argument is without merit and is unsupported by the record.  (No. 3:19-CV-2235-B-BH, doc. 33 at 38.)  The PSR and addenda set forth offense conduct supporting her role as a leader or organizer of a criminal activity that was extensive.  (*See* doc. 147-1 at ¶¶ 12-25; doc. 226-1 at ¶¶ 28, 40, 46, 52, 58, 64, 70, 76, 82, 88.)  As for Movant's allegations that the Court did not conduct an individualized assessment of her case when determining the sentence and failed to apply the sentencing factors under 18 U.S.C. § 3553(a), the Court expressly discussed and considered the factors:

> So it's unfortunate, but she is right at the top of this.  And so I think the sentence under the 3553 factors, where I look at her and how was involved in this case, and then I look at her background and how she was involved in other cases, I want the sentence to promote respect for the law, provide just punishment, deter others and protect the community from her.  And I really think in that case, in that situation, 96 months is the only thing that I can give her.

(No. 3:19-CV-2235-B-BH, doc. 17 at 48-49.) Movant's unsubstantiated claims are without merit, and to the extent considered, the claims should be denied.[12]

## VI.    RECOMMENDATION

The *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on September 17, 2019 (doc. 2), should be **DENIED** with prejudice.

---

[12] Movant also alleges that she "has never been convicted of prostition [sic], or operating a brothel or Whore House." (No. 3:19-CV-2235-B-BH, doc. 33 at 38.)  The record shows that she has previous convictions for promoting prostitution, soliciting prostitution, masturbation for hire, and conspiracy to use an interstate facility in aiding a racketeering enterprise and conspiracy to commit money laundering in connection with a house of prostitution.  (*See* doc. 147-1 at ¶¶ 104, 106, 110; No. 3:19-CV-2235-B-BH, doc. 17 at 48.)  Movant's allegations are meritless.

SIGNED this 25th day of July, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE